KVL, Inc., v. TAX COMMISSION OF WASHINGTON et al. (SEATTLE BROADCASTING CO., Intervener).

No. 550.

District Court, W. D. Washington, S. D.
Oct. 30, 1935.

500

Clarence C. Dill, of Washington, D. C., and Kenneth C. Davis, of Seattle, Wash., for complainant.

Byers, Westberg & James, of Seattle, Wash., for intervening complainant.

G. W. Hamilton, Atty. Gen., State of Washington, and R. G. Sharpe, Asst. Atty. Gen., State of Washington, for defendants, except William B. Severyns, sheriff of King county, Wash.

Before GARRECHT, Circuit Judge, and CUSHMAN and BOWEN, District Judges.

CUSHMAN, District Judge (after stating the facts as above).

Chapter 180 of the Washington Session Laws of 1935, pp. 748, 749, 837, 846, and 847, in part, provides:

"Title X. *Radio Broadcasting Tax.*

"Sec. 74. From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in the business of radio broadcasting. As to such persons the amount of the tax with respect to such business shall be equal to the gross income of the business multiplied by the rate of one-half of one per cent."

"Sec. 76. The taxes imposed hereunder shall be due and payable in bi-monthly installments and remittance therefor shall be made on or before the fifteenth day of the month next succeeding the end of the bi-monthly period in which the tax accrued."

"Sec. 198. All taxes, penalties and interest imposed under the provisions of this act shall be paid in full before any action may be instituted in any court to contest all or any part of such tax, penalties or interest. No restraining order or injunction shall be granted or issued by any court or judge to restrain or enjoin the collection of any tax or penalty imposed by this act, or any part thereof, except upon the ground that the assessment thereof was in violation of the constitution of the United States or that of the State of Washington."

"Title XIX. *Allocation of Revenues.*

"Sec. 211. The state treasurer, upon receipt of any payments of tax, penalty, interest or fees collected under the provisions of this act and of the several titles hereof, shall first deposit to the credit of the general fund the amount of any expenditures from said fund, not previously repaid, on account of refunds of taxes, interest and costs appropriated under the provisions of section 215 of this act and shall deposit the balance thereof to the credit of the following funds:

"17.91% thereof to the state emergency relief fund;

"58.51% thereof to the state current school fund;

"19.05% thereof to the state general fund;

"3.47% thereof to the University of Washington fund;

"0.46% thereof to the Washington State College fund;

"0.265% thereof to the Bellingham Normal School fund;

"0.045% thereof to the Cheney Normal School fund;

"0.28% thereof to the Ellensburg Normal School fund."

The Communications Act of 1934, § 1 (48 Stat. 1064, title 47 USCA § 151), provides: "For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is hereby created a commission to be known as the 'Federal Communications Commission,' which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter."

■ The case is not one within the Eleventh Amendment. This court has jurisdiction and the second ground of the motions is untenable. Ex parte Tyler, Petitioner, 149 U. S. 164–190 and 191, 13 S. Ct. 785, 37 L. Ed. 689; Pennoyer v. McConnaughy, 140 U. S. 1–8, 9, and 10, 11 S. Ct. 699, 35 L. Ed. 363; Osborn v. Bank of United States, 9 Wheat. 738–846 to 858, 6 L. Ed. 204. See, also, Fitts v. McGhee, 172 U. S. 516–529 and 530, 19 S. Ct. 269, 43 L. Ed. 535; Mississippi Railroad Comm. v. Illinois Central Railroad Company, 203 U. S. 335–340, 27 S. Ct. 90, 51 L. Ed. 209.

■ In East Ohio Gas Co. v. Tax Commission of Ohio et al., 283 U. S. 465, at page 470, 51 S. Ct. 499, 500, 75 L. Ed. 1171, the court said: "It is elementary that a state can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom. Pullman Co. v. Richardson, 261 U. S. 330, 338, 43 S. Ct. 366, 67 L. Ed. 682; New Jersey Bell Tel. Co. v. State Board of Taxes, etc., 280 U. S. 338, 346, 50 S. Ct. 111, 74 L. Ed. 463."

■ In the present suit the tax being upon the gross receipts of the business, which is solely radio broadcasting, the question remains, Is radio broadcasting interstate commerce? The question has received an authoritative answer.

In Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co. (Station WIBO), 289 U. S. 266, at pages 279 and 282, 53 S. Ct. 627, 633, 77 L. Ed. 1166, the court said:

"No question is presented as to the power of the Congress, in its regulation of interstate commerce, to regulate radio communications. No state lines divide the radio waves, and national regulation is not only appropriate but essential to the ·efficient use of radio facilities. * * *

"That the Congress had the power to give this authority to delete stations" [the deleted station being in one state and the kc. frequency of the deleted station having been assigned to a station in another state], "in view of the limited radio facilities available and the confusion that would result from interferences, is not open to question."

See, also, Whitehurst v. Grimes (D. C.) 21 F.(2d) 787, Duncan v. United States (C. C. A.) 48 F.(2d) 128; Station WBT v. Poulnot (D. C.) 46 F.(2d) 671–675.

The bills of complaint allege that segregation of intrastate business from interstate business and complainants' withdrawal from their intrastate business are all impossible. Such allegations are taken as true at this stage of the proceedings. It follows that if these allegations be true and the nature of the business and of radio activity and communication is as described in the bills of complaint, the statute imposing the tax is invalid, imposing, as it does, a direct burden on interstate commerce. Cooney v. Mountain States Tel. & Tel. Co., 294 U. S. 384–392, 55 S. Ct. 477, 79 L. Ed. 834; Ratterman v. Western U. Tel. Co., 127 U. S. 411, 8 S. Ct. 1127, 32 L. Ed. 229; Western U. Tel. Co. v. Seay (Alabama) 132 U. S. 472, 10 S. Ct. 161, 33 L. Ed. 409; Williams v. City of Talladega, 226 U. S. 404, 33 S. Ct. 116, 57 L. Ed. 275; Whitehurst v. Grimes (D. C.) 21 F.(2d) 787.

If the holding of the Washington state Supreme Court in Fisher's Blend Station, Inc., v. State Tax Commission et al., 45

502

P.(2d) 942, is in any respect opposed to the conclusion herein reached, we conclude that our determination, the case being one arising under the commerce clause, should be controlled by the decisions of the federal courts herein cited rather than by such decision.

The affidavits filed in support of the applications for interlocutory injunctions are found to support the quoted allegations of the complaints concerning the interstate character of radio communication and complainants' business and the irreparable nature of the damage that would be suffered by complainants if the legislative act attacked was enforced.

The motions to dismiss will be denied and interlocutory injunctions will issue.

Any order or orders embodying rulings herein directed will be tentatively settled upon notice before the local judge.

The clerk is directed to notify the attorneys for the parties of the filing of the foregoing decision.