THE STATE OF FLORIDA ex rel. WALTER R. COMFORT, JR.,
HAROLD W. COMFORT and WILLIAM J. WELLER, as Trus-
tees, and WILLIAM J. WELLER, individually, *Relators,* v.
E. B. LEATHERMAN, as Clerk of the Circuit Court of
Dade County, Florida, *Respondent.*

Division A.

Opinion filed April 23, 1930.

900

Loftin, Stokes & Calkins, for Relators;

Fred H. Davis, Attorney General, and Robert H. Anderson, for Respondent.

BROWN, J.—This is a mandamus proceeding instituted on the relation of Walter R. Comfort, Jr., and others, mortgagees and creditors of certain delinquent owners, against E. B. Leatherman as clerk of the circuit court of Dade County, to compel such clerk to permit the relators to redeem from sales for taxes certain described real estate, for the sum of $22,643.45, which sum had been paid by the relators to such clerk, on September 25, 1929, for the redemption of said property from sales for taxes for the years 1926, 1927 and 1928. The tax certificates had been sold to The Mortgage Discount Company, which company, on August 8, 1929, surrendered them to said clerk and paid to him all of the fees due him on account of the issuance of said certificates and applied for a tax deed to the described property. The clerk published a notice of the application for the tax deed, as required by law, which notice stated among other things that unless the certificates should be redeemed according to law a tax deed would issue for said property on September 26, 1929. The sum of $22,643.45 paid to the clerk by the relators on September 25, 1929, represented the total amount of taxes for which the property was sold, and which The Mortgage Discount

Company, the purchaser and owner of the certificates, had paid, together with interest thereon at the rate of 25 per cent. per annum on the face amount of each certificate for the first year after the issuance thereof, and eight per cent per annum for the time after the first year to the date of payment, to-wit, September 25, 1929, together with a fee of 50 cents for each certificate so outstanding and the cost of publishing the notice of application for tax deed, and eight per cent per annum on the cost of advertising and the clerk's statutory fees from the time notice of application for tax deed was given until the date of the tender. The petition further alleged the refusal of the clerk to permit relators to redeem, and the reason stated by him for such refusal.

An alternative writ of mandamus was issued and the respondent clerk filed an answer, in which he set up as his reason for refusing to permit redemption on the above basis, that, under Section 1002, Comp. Gen Laws of 1927, which was Section 778, Rev. Gen Stats., the relators were required to pay, not only the full amount of said tax certificates, together with fees and cost of publication, but also eight per cent thereon, which meant an additional flat eight per cent on the total amount due the applicant for tax deed on said certificates, together with the cost incurred in advertising the notice of application for tax deed and the statutory fees to which the clerk was entitled, as provided by law.

In his answer, the respondent stated that he had been advised by the Comptroller of the State of Florida, under whose jurisdiction the respondent acted in handling the redemption of tax certificates, that the purpose of said Section 1002, Comp. Gen. Laws, was to permit the delinquent tax payer to redeem his lands from tax certificates after the first publication of notice of application for tax

deed, but before the tax deed is issued, provided such person, in addition to payment to the clerk of the full amount that may then be due the applicant for all certificates, fees and cost of publication, paid the further sum of eight per cent flat on the total amount of money that the law actually required the applicant for a tax deed to pay in order to become qualified to make the application for tax deed. That such had been the interpretation of the statute ever since its original enactment as part of Chapter 4888 of the Acts of 1901, and that the purpose of said Act was to put an increased penalty of eight per cent on the delinquent tax payer for waiting until after publication for notice of tax deed before seeking to redeem property from tax sale, and to give an added incentive to holders of tax certificates to apply for tax deeds at the earliest practicable date, thereby strengthening the state's power of enforcing the collection of revenue.

Upon the filing of the above answer, the relators moved this Court to issue the peremptory writ of mandamus as prayed in the petition, notwithstanding the respondent's answer to the alternative writ, upon the ground that said answer admitted all the allegations of fact set up in the alternative writ and the respondent relied only upon a misconstruction of said Section 1002, Comp. Gen. Laws, as his reason for refusing to obey the command of said alternative writ.

It thus appears that the sole question presented for decision turns on the construction of the last six words of said Section 1002, Comp. Gen. Laws. Said section reads as follows:

"Proof of the publication or posting of such notice as is required by the preceding section and the cost thereof shall be filed by the clerk before any tax deed shall be issued, and at any time before the execution

of such tax deed any person owning or claiming the land therein or any part or parcel thereof or any interest therein, or any creditor of such owner or claimant, may redeem the same by paying to the clerk the *full amount* that may then be due the applicant for all certificates, fees and cost of publication, or such portion thereof as the part or interest redeemed shall bear to the whole, *together with eight per cent. thereon.''* (Italics supplied).

The relators contend that the words "together with eight per cent. thereon," means a sum of money equal to eight per cent. *per annum* on the *"cost of publication"* of the notice of application for a tax deed provided for in section 1000, C. G. L., originally section 8 of Chap. 4888, Laws of 1901.

The respondent contends that the proper construction of the act obligates the redeemer to pay: (1) The full amount of all outstanding tax sale certificates. (2) Interest on the full amount at the rate of twenty-five per cent for the first year and eight per cent for subsequent years. (3) All costs incurred in advertising notice of application for tax deed. (4) The statutory fees to which the clerk is entitled for advertising for tax deed and redeeming the property. (5) On the total of these amounts *an additional flat penalty of eight per cent.*

In support of their contention, relators argue that under Sections 981, 982 and 983, Comp. Gen. Laws of 1927, there is no difference in certificates, in form or effect, whether held by the State or owned by an individual, and that therefore the property may be redeemed on the same terms, and that under Sections 993 and 994, Comp. Gen. Laws, providing for the redemption of property from tax sales, the rate of interest to be paid on redemption is fixed by

the following language, namely: "and interest on all un-paid  *  *  *  taxes for the year 1917 and subsequent years, at the rate of twenty five per cent. per annum for the first year and eight per cent. per annum thereafter, beginning with the first day of April next after the year for which taxes are due." And that these rates of interest are the precise rates paid by the holder of the certificates involved in this suit when it purchased them from the Clerk of the Circuit Court.

Attention is also directed to the statutory form of cer-tificate, reciting what is necessary to redeem property from a tax sale, namely: "The same shall be redeemed  *  *  * by the payment of said amount, with interest at the rate of twenty-five per cent. per annum for the first year and eight per cent. per annum thereafter." The "said amount" referred to being the amount previously mentioned therein, namely: "for the sum of———dollars and———cents, said sum being the amount due and unpaid for taxes, costs and charges,  *  *  *" and being the recited consideration for the issuance of the certificate. See Sec. 981, Comp. Gen. Laws.

Relators also call attention to the fact that Sec. 985, Comp. Gen. Laws, 1927, originally Sec. 5, Chap. 4888, Acts 1901, Laws of this State, gives the right to redeem "the same at any time after such sale and before a tax deed is issued therefor." It also provides that the redemption may be had, "by paying to the Clerk of the Circuit Court of the County  *  *  *  the face of the certificate of sale, and interest thereon at the rate of twenty-five per cent per annum for the first year, and eight per cent per annum for the time after the first year from the date of sale, together with a fee of fifty cents for the Clerk for each certificate or part of certificate so redeemed." It further provides that the Clerk, when any land shall be so redeemed,

"shall refund to the holder of the tax certificate the whole amount received by him for redemption less his fee of fifty cents, * * *"

Relators insist that therefore if the redemption is made after publication of notice of application for a tax deed, and this added expense has been incurred, Sec. 1002 Comp. Gen. Laws, intends that the only additional burden which shall be placed upon the redeemer is that he shall pay the cost of the publication of notice, and *eight per cent per annum on such cost* from the time of publication to the time of redemption. That thereby the holder of the redeemed certificate is made whole in all respects, and, in addition, receives interest on the principal indebtedness—the amount of the unpaid taxes, costs and charges—from the time he acquired the certificate to the time of redemption.

Relators further argue that it would be imputing to the Legislature an intention to deal harshly and arbitrarily with delinquent tax payers, many of whom are unfortunate nowadays, to say that the Legislature intended to add a penalty of eight per centum of the aggregate amount for which the property could admittedly be redeemed, if redeemed the day before the first publication of notice of application for a tax deed, merely because the tax payer delays redemption until after publication of such notice. That there is no reason why the publication of such notice should be made the "dead line;" that the only added thing that occurs by publication of the notice is the expense of the publication, and that if the person redeeming is required to pay this expense and interest thereon at the legal rate, he is sufficiently penalized for the short delay, and the holder of the tax certificate is made whole. That such an added burden as a penalty of eight per cent. flat would tend to discourage, rather than to encourage, the

redemption of property from tax sales. That this court has held that statutes conferring power to impose taxes must be construed strictly, and when there is an ambiguity as to the extent of the power it is to be determined in favor of the public and against the grantee (Mosely v. Tift, 4 Fla., 402; Exparte Sims, 40 Fla. 432, 25 So. R. 280), while it has held that provisions for the redemption of lands sold for taxes should be liberally construed. (Henry v. Fla., L. & M. Co., 38 Fla. 269, 21 So. R. 19; Hightower v. Hogan, 69 Fla. 86, 69 So. R. 669.)

On the other hand, it is contended in behalf of respondent that if any presumptions are to be indulged they should go in favor of the departmental construction of the statute, which, as set forth in the answer, has been followed continuously from its enactment in 1901 up to the present time, and pursuant to which construction the respondent acted in the instant case. That this court is committed to the doctrine that a practical construction of a statute by a governmenal department, when not in conflict with the Constitution or the plain intent of the act, is of great persuasive force and efficacy, (Amos v. Mosely, 74 Fla., 555, 77 So. R. 619; State v. Bryan, 50 Fla. 293, 39 So. R. 929), and especially when established by long usage (Bloxham v. Consumers Electric Light Co., 36 Fla. 519, 18 So. R. 444, 51 A. S. R. 44).

Respondent contends that Chap. 4888 of the Laws of 1901, from which Sec. 1002 Comp. Gen. Laws is derived, provided an effective means which had not hitherto existed, whereby the owner might receive notice that a tax deed had been applied for, and having conferred this advantage, and having in effect extended the time for redemption, the Legislature, in order to make him vigilant, imposed this additional penalty for sleeping on his rights. The power of the Legislature to impose such a penalty is not denied.

Much higher penalties have been imposed in some States, and upheld as within legislative power. Blackwell on Tax Title, 5 Ed., Sec. 722. Gage v. Parker, 103 Ill. 528.

That to give the statute the meaning for which the relators contend, the phraseology would have to be different; that it would be necessary to take the words "per annum" and physically force them into the act, and that the phrase "on such fees and costs of publication" would have to be substituted for the word "thereon."

Section 1002 Comp. Gen. Laws has come down to us unchanged from Chapter 4888 of the Acts of 1901, where it appeared as Sec. 9 of that statute. As in the original act, so also in the Comp. Gen. Laws, this section of the statute is sandwiched between those provisions pertaining to matters of publication of application for tax deed and those relating to what must be done in order to obtain the tax deed. As above shown, it provides that "at any time before the execution of such tax deed, any person owning or claiming the land therein or any part or parcel thereof or any interest therein, or any creditor of such owner or claimant, may redeem the same by paying to the clerk *the full amount* that may then be *due* the applicant *for all certificates, fees and cost of publication,* or such portion thereof as the part or interest redeemed shall bear to the whole, *together with eight per cent thereon."* (Italics supplied.)

This is the only statutory provision dealing with what the redeemer must pay in order to redeem after the publication of the notice as required by the preceding sections, and must therefore be given controlling effect if there be any seeming or actual conflict between its provisions and those of the preceding sections, such as Secs. 981, 985, 993 and 994, Comp. Gen. Laws. In order, however, to give all provisions of the statute, both as originally

enacted in 1901 and as subsequently amended in certain particulars, as now appearing in the Comp. Gen. Laws, a reasonable field of operation it would appear that the preceding provisions of the statute referred to by the relators would apply to redemption before application for tax deed and publication of notice, whereas Sec. 1002 would apply to and control redemptions made after publication of such notice.

We think the contention of the respondent is well founded that the word "thereon," the last word of said Sec. 1002, could not have referred to any other subject in the sentence except the words "the full amount that may then be due the applicant for all certificates, fees and cost of publication." As pointed out by the relators, "the full amount" then due the applicant for each certificate, that is, up to the time of application for tax deed, which is regulated by the provisions governing redemption before that time, is fixed by those statutes at the amount of the taxes, with interest at the rate of twenty-five per cent. per annum for the first year and eight per cent. per annum thereafter. In other words, no other reasonable meaning can be given to the words "full amount" and "then be due" than that they included the taxes for which the lands were sold, with interest at twenty-five and eight per cent. for the first and subsequent years, respectively, together with fees and cost of publication, this being the principal amount, so to speak, liquidated as of the time of application for a tax deed, or at commencing of publication of notice therefor. Then, omitting for the moment the alternative phrase as to redemption of a portion of the land, there follows the words, preceded only by a comma, "together with eight per cent. thereon." With the intervening alternative clause omitted it reads: "by paying to the clerk the full amount that may then be due the appli-

cant for all certificates, fees and cost of publication, together with eight per cent. thereon.'' It is quite clear that the phrase ''together with eight per cent. thereon,'' separated as it is only by commas from the principal phrase, (and the intervening phrase being in the alternative), can mean nothing else than eight per cent. on the principal amount so liquidated to-wit: ''The amount due'' for all certificates, fees, and cost of publication. This evident meaning is strengthened by the use of the word ''thereof'' in the intervening clause commencing ''or such portion thereof.'' This word ''thereof'' manifestly refers to the total amount due for certificates, plus fees and cost of publication, for otherwise redemption could be made of a portion of the land by paying only the proportionate part of the *fees and cost of publication,* which, of course, could not have been intended.

It is further contended by the respondent that no reason appears why the Legislature should make the owner pay such a trifling sum as eight per cent. per annum on the cost of publication, which in most cases would scarcely amount to more than ten or fifteen cents, although in this case it involves a large number of certificates and an unusually large amount of money, and amounts to probably as much as $25.00.

It is apparent that the language of this section refers to an aggregate total sum, and that the words ''certificates,'' ''fees,'' and ''cost of publication'' are all parts of a series, co-ordinate clauses, and are all objects of the preposition ''for,'' and all refer to the words ''full amount.'' Consequently the words ''together with eight per cent. thereon'' also refer to the words ''full amount,'' that is, ''the full amount that may then be due the applicant for all certificates, fees and cost of publication.'' The language of the

section deals with an aggregate total sum, and the last part of the section merely sets forth the items comprising this aggregate sum, and hence the word "thereon" refers to the words "full amount." This is the construction which the ordinary and common usage of the language employed leads to. We conclude, therefore, that there is no real ambiguity in the statute. If there were, the forcible argument in behalf of relators and the authorities cited by them might lead us to resolve the ambiguity and doubt in favor of the relators and others in like situation, seeking the redemption of lands from tax sales. But, as we see it, there is no ambiguity, either when this section is construed by itself or in *pari materia* with the other existing statutory provisions, or when construed in connection with the entire original statute from which this section is derived. Thus, if section 5 of the original act of 1901 were held to control, the words "together with eight per cent. thereon" of section 9 would be without effect or significance, but section 5 was evidently intended to apply only in cases where the redemption is made before a tax deed is applied for, while section 9 applies where redemption is made after the application for tax deed.

In a letter from Comptroller Amos to the Attorney General, attached to the respondent's answer pertaining to the construction of the disputed clause in said Sec. 1002, the concluding paragraph reads:

"This eight per cent. has been continuously construed as being eight per cent. flat on the total amount of money that the law actually requires the applicant for a tax deed to pay in order to become qualified to make the application." Our conclusion is that this departmental construction is clearly justified by the language of the statute.

Accordingly the motion of relators for the peremptory

writ must be denied and the alternative writ heretofore issued will be quashed. And it is so ordered.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.