VOLUNTEER STATE LIFE INSURANCE COMPANY, a Corporation Organized and Existing Under the Laws of the State of Tennessee, v. J. EDWIN LARSON, as State Treasurer of the State of Florida, and Ex-Officio Insurance Commissioner of said State.

2 So. (2nd) 386
Special Division B
Opinion Filed May 16, 1941
Rehearing Denied June 5, 1941

*Oven & Oven,* for Appellant;

*J. Tom Watson,* Attorney General, and *Thomas V. Kiernan,* Assistant Attorney General, for Appellee.

CHAPMAN, J.—The question for decision presented to this Court on appeal from the Circuit Court of Leon County, Florida, is whether or not, under the provisions of Chapter 19501, Acts of 1939, the Volunteer State Life Insurance Company shall be permitted or allowed to deduct the sum of $76,158.22 from the total amount of gross premiums, being in the sum of $204,582.92, written by it in Florida during the year 1939. The sum of $75,016.00 was paid in cash to its policy holders during said year as cash surrender values and for cancellation of policies pursuant to the provisions thereof, while the sum of $1,142.22 in premiums during said year was actually applied by its policy holders to a reduction of or as a part payment of their annual maturing premiums for 1939.

The pertinent provisions of Chapter 19501, Acts of 1939, are found in Section 1 and are, viz.:

"Section 1. That all taxes on premiums from policy holders received by persons, firms, associations or corporations authorized to transact an insurance business on risks to person or property in the State of

Florida, and required by law to be paid to the State Treasurer, shall, unless specifically provided otherwise by later statute, be calculated upon gross premiums received, omitting premiums on reinsurance accepted, and less return premiums and cancellations, but without deductions for reinsurance ceded to other companies. Tax returns shall be made on forms to be prescribed by the State Treasurer, and shall be sworn to by one or more of the executive officers of the companies or associations making such returns."

The statute, *supra,* provides that all taxes on premiums from policy holders received by persons and corporations in Florida doing an insurance business, whether the risk assumed be on persons or property in Florida, shall be payable to the State Treasurer and the amount shall be two per cent (fixed by Section 1182 C. G. L.) of the gross premiums received by the said insurance company, but in calculating the amount due as "gross premiums received" the State Treasurer shall omit in said calculation: (a) premiums on reinsurance accepted; (b) and less return premiums and concellations; (c) but no deduction from "gross premiums received" for reinsurance ceded to other insurance companies. The case at bar involves "gross premiums received" for life insurance written by the appellant in the State of Florida during the year 1939.

The interpretation placed on Section 1182 C. G. L. by the Insurance Department of the State Treasurer's office since 1913 is that the two per cent tax levied on the gross receipts of premiums from policy holders in Florida did not include dividends used by the policy holders in the reduction of the amount of their annual premiums. In other words, the administrative interpretation or construction since 1913 is that the sum

of $1,142.22 in premiums paid by policy holders during the year 1939 was *not* deductible from the sum of $204,582.92, being the amount of the gross receipts of premiums for 1939. It is necessary here to construe or interpret Section 1182 C. G. L. and Chapter 19501, Acts of 1939, as the statutory law applicable to the case at bar.

Section 1182 C. G. L. provides that insurance companies shall on or before the first day of March of each year pay to the State Treasurer two per cent of the gross amount of receipts of premiums from policy holders in Florida, and Chapter 19501, Acts of 1939, provides the method or rule of calculating the total amount due after permitting or allowing certain enumerated deductions. It will be observed that the words "and cancellations" were not included in Section 1182 C. G. L., and since the enactment of Chapter 19501, *supra,* it is questionable whether or not sufficient time has elapsed to establish an administrative construction of the words "and cancellations." It is settled law that a construction placed on a statute by a State administrative officer, as shown to have occurred in the case at bar, is a persuasive force and influential with the courts, when found not to conflict with some provision of the Constitution or the plain intent of the statute. See Frey, Inc., v. State *ex rel.* Taylor, 127 Fla. 671, 173 So. 812; State v. Bryan, 50 Fla. 293, 39 So. 929; Amos v. Mosley, 74 Fla. 555, 77 So. 619; L. R. A. 1918C 482; State v. Leatherman, 99 Fla. 899, 128 So. 21; Bloxham v. Consumers' Elec. Light, etc., R. Co., 36 Fla. 519, 18 So. 444, 51 Am. St. Rep. 44, 29 L. R. A. 507.

Section 1 of Chapter 19501, *supra,* directs that the State Treasurer in calculating the amount due upon

gross premiums received shall: (a) omit premiums on reinsurance accepted; (b) and likewise shall omit or deduct in said calculation "return premiums and cancellations." Involved here is a taxation statute and it can be presumed that the Legislature placed therein and omitted therefrom items and things intended to be taxed or omitted from taxation. See State v. Beardsley, 84 Fla. 109, 94 So. 660. It appears that we are controlled in the construction of Chapter 19501 by the intent of the Legislature as gleaned from the Act. The history of the legislation cannot be of much assistance when contradicting the plain mandates of the Act. The legislative intent is so clear and well fixed that the duty of the Court here is to follow the plain language employed by it. It simply states that the State Treasurer when calculating the amount due upon gross premiums received by him shall deduct in said calculation from the amount of the gross premiums received "return premiums and cancellations."

It therefore follows that the deduction in the sum of $75,016.00 claimed as the cash surrender value of the policies paid the policy holders during the year 1939 should have been allowed from the total of $204,582.92. The administrative construction to the effect that the dividends as applied in payment of annual maturing premiums is proper and therefore not deductible and was not erroneous and the same is hereby affirmed.

The order appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN, C. J., TERRELL and BUFORD, J. J., concur.